# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

NALLELY KASSANDRA
ROBLEDO JAIME,

               Petitioner,

      v.

JAMES JANECKA, et al.,

               Respondents.

Case No. 5:26-cv-04181-MBK

ORDER GRANTING PETITION AND
ISSUING A WRIT OF HABEAS
CORPUS

Petitioner Nallely Kassandra Robledo Jaime, a native and citizen of Mexico, is in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Ms. Robledo Jaime entered the United States in October 2024. She was interviewed by an asylum officer and released into the United States on humanitarian parole. In May 2026, immigration officers arrested Ms. Robledo Jaime and transported her to the Adelanto Detention Facility.

Ms. Robledo Jaime filed the instant habeas Petition on July 26, 2026. Dkt. 1. She contends that her detention violates her right to due process under the Fifth Amendment and the Administrative Procedure Act ("APA").

*Id.* at 15-17. Petitioner also claims that she is subject to 8 U.S.C. § 1226(a) and a member of the Bond Eligible Class certified in *Maldonado Bautista*, No. 5:25-CV-01873-SSS-BFM (C.D. Cal.), and not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). *Id.* at 9-10, 14-15. Respondents filed an Answer in which they did not meaningfully address Petitioner's due process and APA claims. Dkt. 8.

For the reasons that follow, the Court concludes that Petitioner is entitled to release because her detention without notice and an opportunity to be heard violated due process and because Respondents have knowingly violated her rights under Section 1226(a).

## I.     FACTUAL AND PROCEDURAL HISTORY

Petitioner Nalley Kassandra Robledo Jaime is a citizen and national of Mexico. Dkt. 1 at 12.  In 2024, she and her twelve-year-old son fled Mexico to escape the physical and psychological abuse she was subjected to on account of her sexual orientation as a lesbian. *Id.* Petitioner and her son entered the United States on October 23, 2024, near San Luis, Arizona. *Id.*

On October 26, 2024, an asylum officer interviewed Petitioner and determined that she has a credible fear — and a reasonable probability — of persecution on account of her status as a sexual minority in Mexico. *Id.* DHS processed Ms. Robledo Jaime and released her into the United States on humanitarian parole pursuant to INA § 212(d)(5), 8 U.S.C. § 1182(d)(5), on October 30, 2024, subject to periodic reporting requirements administered by ICE. *Id.* She settled in Santa Barbara, California, near her lawful-permanent-resident mother, Gloria Yecenia Jaime Villa. *Id.*; Dkt. 1-1 at 8.

On October 31, 2024, DHS served Ms. Robledo Jaime with a Notice to Appear (Form I-862), charging her with inadmissibility under INA §

212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i) (present without admission or parole). The NTA designates Petitioner as "an alien present in the United States who has not been admitted or paroled." Dkt. 1 at 12; Dkt. 1-1 at 4-6.

Through counsel, Ms. Robledo Jaime timely filed an application for asylum, withholding of removal, and protection under the Convention Against Torture (Form I 589) on December 19, 2024. Dkt. 1 at 13. Ms. Robledo Jaime is also the beneficiary of an approved Form I-130, Petition for Alien Relative, filed by her mother. USCIS approved the petition, classifying Petitioner as the unmarried daughter of a lawful permanent resident under INA § 203(a)(2)(B), 8 U.S.C. § 1153(a)(2)(B), with a priority date of September 12, 2017. This approved petition affords Petitioner an independent, family-based pathway to lawful permanent residence. *Id.*; Dkt. 1-1 at 12.

At Petitioner's merits hearing on February 2, 2026, the Department filed an oral motion to pretermit her asylum application, alleging that she was subject to removal to a third country under agreements with Ecuador, Guatemala, and Honduras. Dkt. 1 at 13. Counsel immediately requested a short continuance to prepare a written response, but the IJ denied that request and ordered Petitioner removed. *Id.*

Petitioner timely appealed the removal order to the Board of Immigration Appeals. *Id.* Her appeal remains pending, and her Brief in Support of Appeal and Motion to Remand and Terminate was filed and received by the Board on July 20, 2026. *Id.*; Dkt. 1-1 at 15-30. Because a timely appeal is pending, the removal order is not administratively final and her removal is automatically stayed pursuant to 8 C.F.R. § 1003.6(a).

Petitioner remained at liberty under ICE supervision for approximately nineteen months following her release, during which time she complied with all terms of her release. Dkt. 1 at 13. On May 20, 2026, ICE took her into

custody. *Id.* She has remained detained at the Adelanto Detention Facility since that time. *Id.* ICE did not provide her with any prior notice that it was revoking her release, any statement of reasons, or any opportunity to contest whether her re-detention was warranted before a neutral decisionmaker. *Id.*

Thereafter, an Immigration Judge ("IJ") denied Petitioner release on bond. *Id.* Petitioner believes the denial rested upon the position —  adopted in *Matter of Yajure Hurtado* and DHS's July 8, 2025 interim guidance — that Petitioner is an applicant for admission subject to mandatory detention under § 1225(b)(2)(A), such that the IJ lacked authority to consider bond. *Id.* at 13-14.

Ms. Robledo Jaime has no criminal history, no prior orders of removal predating these proceedings, and no pending criminal proceedings. *Id.* at 14. As of the date of the Petition, Ms. Robledo Jaime had been detained for 64 days without any individualized determination by a neutral decisionmaker that she is a danger to the community or a flight risk. *Id.*

Ms. Robledo Jaime filed the instant habeas Petition on July 26, 2026. Dkt. 1. She argues that her detention violates his right to due process under the Fifth Amendment and the Administrative Procedure Act. *Id.* at 15-17. Petitioner also contends that she is subject to 8 U.S.C. § 1226(a) and a member of the Bond Eligible Class certified in *Maldonado Bautista*, No. 5:25-CV-01873-SSS-BFM (C.D. Cal.), and not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). *Id.* at 9-10, 14-15. She seeks immediate release from DHS custody and return of her personal property. *Id.* at 17-18.

Respondents timely filed their Answer on August 3, 2026. Dkt. 8. In their brief answer, Respondents state that "Petitioner is lawfully detained pending removal proceedings pursuant to 8 U.S.C. § 1226(a), and therefore Respondents oppose release." *Id.* at 1. They, however, "do not oppose the

Court ordering a bond hearing pursuant to 8 U.S.C. § 1226(a)." *Id.* at 1-2. The answer does not address the merits of Petitioner's claims.

Petitioner filed a reply on August 4, 2026. Dkt. 9. Both parties have consented to proceed before the Magistrate Judge. Dkt. 7.

## II.   DISCUSSION

Petitioner Robledo Jaime argues that her detention without notice or a hearing violates procedural due process. Dkt. 1 at 16-17. Based on the alleged due process violation, Petitioner requests the Court order her immediate release from custody and prohibit Respondents from re-detaining her absent a pre-deprivation hearing where the Government must show materially changed circumstances warranting her detention. *Id.* at 17-18.

Respondents do not address Petitioner's due process claim in their Answer. The Answer consists of two paragraphs that notify the Court that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and that Respondents challenge her release from custody, but do not oppose providing Petitioner a bond hearing. Dkt. 8 at 1-2. Respondents do not acknowledge the Petitioner's due process claim challenging the lack of pre-deprivation process she received, contest the basic facts giving rise to her due process claim, or otherwise seek to justify her continued detention.

The Court concludes that Petitioner is entitled to release because her re-detention without a hearing violates due process and because the Government has knowingly violated her rights as a *Maldonado Bautista* class member.

### A. Petitioner's Re-Detention Violates Due Process

As set forth above, Respondents do not meaningfully respond to Petitioner's claim that her re-detention violates due process. Respondent's failure to meaningfully contest Petitioner's due process claims in their Answer

5

is a concession that the Petition should be granted. *See Singh v. Warden Desert View Annex, et al.*, No. 26-cv-00440-FMO-AJR, Dkt. 9 (C.D. Cal. Feb. 9, 2026) (granting petition where "the court construes respondents' failure to address petitioner's due process claim as a concession of petitioner's argument"); *Soleimani v. Larose*, No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting petition because, "[b]y failing to respond to the claims actually asserted, Respondents have conceded the claims"). *See also N-E-M-B v. Wamsley*, No. 3:25-cv-989-SI, 2025 WL 3527111, at *1 (D. Or. Dec. 9, 2025) ("Respondents do not challenge any aspect of the Petition on the merits and thus the Court finds that Respondents have waived such challenges and conceded those aspects of the Petition."); *E-M- v. Hermosillo*, No. 3:25-cv-1083-SI, 2026 WL 883776, at *1 (D. Or. Mar. 31, 2026) ("Respondents do not challenge Count Three on the merits and thus the Court finds that Respondents have waived any such challenge and conceded those aspects of Count Three of the Petition"); *Rojas v. Mullin*, No. 26-cv-1437-FMO-MAA, 2026 WL 1105039, at *1 (C.D. Cal. Apr. 17, 2026) (granting petition where "the court construes respondents' failure to address petitioner's due process claim as a concession"); *Khoury v. Noem*, No. 5:26-cv-00113-SRM-MBK, 2026 WL 846040, at *3 (C.D. Cal. Jan. 22, 2026) (granting TRO requiring the petitioner's release where "the Court construes Respondents' failure to address this argument as a concession that Petitioner is likely to succeed on the merits of this claim").

"To the extent that respondents' non-opposition to a bond hearing implies opposition to release, an implication is not an argument." *Luis Alfredo Barajas-Bautista v. Warden, Desert View Annex, et al.*, No. 5:26-cv-03135-SK, 2026 WL 2058433, at *1 (C.D. Cal. July 13, 2026); *Chavez Pastore v. Warden of Adelanto ICE Processing Ctr., et al.*, No. 5:26-cv-04002-BFM, 2026 WL

6

2178765, at *1 (C.D. Cal. July 27, 2026) (granting release where "Petitioner argued for release, Respondents did not respond to that argument—instead, they merely conceded his eligibility for a lesser form of relief that Petitioner sought in the alternative and registered their opposition to any other form of relief."). Where the "government does not offer any argument on the merits" of the claims in the petition, "it has waived any challenge to the arguments [ ] raised." *Martinez v. Sessions*, 873 F.3d 655, 660 (9th Cir. 2017). "The court is 'not a roving commission' charged with making respondents' case for them." *Barajas-Bautista*, 2026 WL 2058433, at *1 (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020)). As such, "respondents have not met their burden 'to show cause why the writ should not be granted.'" *Id.* (quoting 28 U.S.C. § 2243).

This Court has previously found that noncitizens in circumstances comparable to Petitioner were entitled to release because their re-detention without a hearing or a material change in circumstances violated due process. *See e.g.*, *Sun v. Warden of Adelanto ICE Processing Center, et al.*, No. 5:26-CV-03595-MBK, 2026 WL 2058437, at *1 (C.D. Cal. July 14, 2026); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *4 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026). For the reasons stated in those decisions, the Court finds that Petitioner is entitled to release based on her due process claim.

## B. Petitioner's Ongoing Detention Violates Section 1226(a)

Additionally, Respondents do not contest Petitioner's contention that she is a member of the Bond Eligible Class certified in *Maldonado Bautista* and do not object to a bond hearing under Section 1226(a). This Court agrees with the growing number of courts in the Ninth Circuit who have found that the Government's non-compliance with *Bautista* and similar rulings warrants

7

release. *See Perez v. Acting Warden of the Adelanto Detention Center*, No. 5:26-cv-03936-MBK, Dkt. 10 at 11-12 (C.D. Cal. July 30, 2026) (collecting cases).[1]

### 1. Detention under Section 1226(a)

The Court begins by reviewing the procedures applicable to a noncitizen's arrest and detention under Section 1226(a).

Section 1226(a) "sets out the general rule" for "the arrest, detention, and release" of "aliens present in the country" "who are believed to be subject to removal." *Nielsen v. Preap*, 586 U.S. 392, 396 (2019). Under Section 1226(a) and its implementing regulations, a DHS officer may arrest and take into custody a noncitizen "under the authority of Form I–200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b).[2] The Government "may" detain such individuals "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). DHS officers conduct an initial custody determination to decide whether to release or detain the person. 8 C.F.R. § 1236.1(c)(8). Unless the person is subject to mandatory detention under Section 1226(c) based on their criminal history, DHS has "the discretion either to detain the alien or to release him on bond or parole." *Nielsen*, 586 U.S. at 396. The DHS officer must release the noncitizen if they "demonstrate to the satisfaction of the officer that such release would

---

[1] The Ninth Circuit recently issued a decision in a different habeas action agreeing with *Maldonado Bautista* on the merits and holding that individuals like Petitioner are properly subject to Section 1226(a). *See Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026).

[2] DHS officers have the authority to conduct a warrantless arrest if there is probable cause to believe a person is subject to removal and "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). *See generally Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). Such individuals must be promptly brought before an examining officer to determine if the person is subject to removal, 8 C.F.R. § 287.3(a), and if they are subject to Section 1226, referred for a custody determination "48 hours of the arrest" absent an emergency or other extraordinary circumstances, *id.* at § 287.3(d).

8

not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

After the initial custody determination, the noncitizen may request that an IJ review the determination at a bond hearing in immigration court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19. "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). The noncitizen can "appeal an adverse decision to the BIA." *Id.* (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." *Id.* (citing C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is also appealable to the BIA." *Id.* The noncitizen may also seek judicial review of the immigration courts' bond determination through a habeas petition challenging the determination as constitutionally deficient, legally erroneous, or an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz*, 53 F.4th at 1202.

**2. DHS's Policy Change and the *Maldonado Bautista* Final Order and Judgment**

Until recently, it had been the Government's longstanding position that individuals like Petitioner—who entered the United States without inspection, but were later apprehended in the interior of the country—were subject to the detention and release authority of Section 1226. However, the Government now takes a different position. On July 8, 2025, DHS issued a notice entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," in which it announced that it had "'revisit[ed] its legal position on detention and release authorities,' determining that Section 235 of the Immigration and Nationality Act ("INA") would serve as the applicable immigration detention authority rather than Section 236 for all 'applicants for admission.'" *Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1094 (C.D. Cal. 2025) (quoting July 8, 2025 notice). "In other words, the change in policy requires ICE employees to consider anyone arrested in the United States and charged with being inadmissible as an 'applicant for admission' under 8 U.S.C. § 1225(b)(2)(A)." *Id.* The BIA has since issued a decision agreeing with DHS's position that such individuals are properly subject to Section 1225(b). *See Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

DHS's new policy significantly impacts the rights of noncitizens like Petitioner and their ability to seek release from immigration confinement. Section 1225 applies to two categories of noncitizens: "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation"; and "Section 1225(b)(2) . . . serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Under the Government's new policy, noncitizens like Petitioner are

categorized as falling within the second category—"applicants for admission" subject to Section 1225(b)(2). Under that provision, a noncitizen "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. 8 U.S.C. § 1225(b)(2)(A).

While Section 1225(b)(2) states that applicants for admission "shall" be detained, they nonetheless "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" under the authority of Section 1182(d)(5)(A). *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)). Parole determinations are conducted by DHS officers pursuant to standards laid out in DHS policy, and the grant rates for parole have significantly fluctuated over time. *See generally* 8 C.F.R. § 212.5(a); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 323-25 (D.D.C. 2018). The immigration courts have no authority to review parole determinations by DHS officers. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. at 219 n.4 (whether a noncitizen "might be subject to parole by the Attorney General or DHS . . . is not an issue that the Immigration Judge has authority to consider"). Further, the immigration courts lack the authority to hold a bond hearing for applicants for admission detained under Section 1225(b). *See Jennings*, 583 U.S. at 297-300.

DHS's new policy has engendered an enormous amount of litigation in courts across the country, including the class action in *Maldonado Bautista*. The Court will not recount the lengthy procedural history of *Maldonado Bautista*, which is detailed in Judge Sykes' December 18, 2025 order and final judgment. *Bautista*, 813 F. Supp. 3d at 1093-95. The upshot of Judge Sykes' order is as follows. First, the court certified a "Bond Eligible Class" comprised of: noncitizens "without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended

11

upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Id*. at 1025. Second, the court issued a class-wide declaration that the Government's new policy with respect to individuals who entered without inspection violated the INA and due process and vacated the DHS policy as contrary to law. *Id*. at 1127. The court's declaration makes clear that, going forward, class members may only be subject to the detention and release authority in Section 1226(a). *Id*.

Several months later, on June 18, 2026, Judge Sykes granted the petitioners' motion to enforce the final judgment and, based on Respondents' continued noncompliance with her orders, vacated *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). *Bautista v. Santacruz*, 820 F. Supp. 3d 1016, 1032 (C.D. Cal. 2026). The Ninth Circuit subsequently stayed the vacatur of *Yajure-Hurtado* as well as Judge Sykes' order and final judgment outside the Central District of California, but declined to stay the order and final judgment inside this District. *See Bautista, et al. v. United States Department of Homeland Security, et al.*, Nos. 25-7958, 26-1044, Dkt. 14 (9th Cir. March 31, 2026). As noted above, the Ninth Circuit recently issued a decision in a separate habeas matter that agreed with Judge Sykes' analysis and found unlawful the Government's policy applying Section 1225 to individuals who entered without inspection. *See Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026).

As Respondents acknowledge, the final judgment in *Maldonado Bautista* has preclusive effect for members of the Bond Eligible Class in the Central District like Petitioner. *See Granados v. Warden et al.*, No. 5:26-CV-00670-AH-DFM, 2026 WL 852211, at *3 (C.D. Cal. Mar. 25, 2026) ("it appears that Respondents are precluded from relitigating whether "Bond Eligible

12

Class" members—such as Petitioner—are entitled to the relief provided in the Bautista final judgment"); *Miguel Angel Cortez Lozano v. Ernesto Santacruz Jr. et al.*, No. 5:26-cv-00313-SSS-BFM, 2026 WL 325462, at \*4 (C.D. Cal. Feb. 4, 2026). *See generally De Corral v. Woosley*, No. 4:25-cv-145-BJB, 2026 WL 524778, at \*3 (W.D. Ky. Feb. 25, 2026) ("Under settled principles of collateral estoppel, the Central District's final declaratory judgment binds the parties 'with respect to the matters declared.'") (quoting Restatement (Second) of Judgments § 33).

Nonetheless, the Government has declined to comply with the *Maldonado Bautista* final judgment since it was issued. *See Bautista*, 820 F. Supp. 3d at 1023 (discussing the Government's systematic noncompliance) Instead, as discussed above, the Government continues to arrest and detain Bond Eligible Class members like Petitioner under the putative authority of Section 1225(b), even though it recognizes that its actions are unlawful. As a result, hundreds of Bond Eligible Class members like Petitioner have been unlawfully arrested and detained in violation of their statutory and due process rights under the *Maldonado Bautista* final judgment. *Id.*

### 3. Respondents Violated Petitioner's Rights under Section 1226(a)

As discussed, Respondents do not dispute that Petitioner's detention violates the *Maldonado Bautista* final judgment and that he is entitled to a bond hearing under Section 1226(a). The Court finds that Petitioner has shown that he is entitled to release based on the Government's knowing violation of his statutory and constitutional rights. In so holding, the Court joins the growing number of courts in the Ninth Circuit who have found that the Government's noncompliance with *Bautista* and similar rulings warrants release. *See, e.g., Reyes v. Santacruz, Jr.*, No. 26-cv-3394-E, 2026 WL 2069974, at \*2 (C.D. Cal. July 13, 2026); *Garcia-Maya v. Mattos*, No. 2:26-cv-01513-

RFB-BNW, 2026 WL 1965886, at *7 (D. Nev. July 7, 2026); *Rodas-Dieguez v. Noem*, No. 3:26-cv-00976-RBM-MMP, 2026 WL 549910, at *1 (S.D. Cal. Feb. 26, 2026); *Maciel v. Noem*, No. 1:26-cv-01318-DC-CKD, 2026 WL 496948, at *5 (E.D. Cal. Feb. 23, 2026). *See also Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (observing that "[i[n recent months, courts across the country have ordered the release of detainees in similar situations" and collecting cases).

As these courts have found, release is an appropriate remedy given the nature of the violations at issue. "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under" Section 1225(b). *Rodriguez Diaz*, 53 F.4th at 1202. As discussed above, these protections include: (1) the requirement that DHS generally obtain a warrant, issued following supervisory review, to arrest a noncitizen; (2) an initial custody determination by a DHS officer shortly after the noncitizen's arrest; (3) if the noncitizen is not released at the initial custody determination, the right to seek review before an IJ at a bond hearing; (4) the right to appeal an adverse IJ bond ruling to the BIA and to seek federal court review in habeas; and (5) the right to seek a new bond hearing before an IJ based on changed circumstances. *See supra* Section III.A. Section 1226(a) and its implementing regulations therefore provide "several layers of review" to protect against erroneous deprivations of liberty. *Rodriguez Diaz*, 53 F.4th at 1202.

But because the Government arrested Petitioner under the concededly incorrect authority of Section 1225(b), Petitioner has been deprived of these protections. It follows that "Petitioner's detention 'was unlawful from its inception because ICE detained him under the wrong statute and without affording him any notice or process whatsoever, much less the procedures due

14

under Section 1226(a).'" *Garcia-Maya*, 2026 WL 1965886, at *8 (quoting *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 319-20 (E.D.N.Y. 2025)). "In the absence of an initial custody determination, which establishes a lawful basis for detention in the first instance, a subsequent bond hearing 'is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip' Petitioner of his freedom." *Id.* (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)).

Section 1226(a) provides protections that safeguard Petitioner's due process protected interest in freedom from arbitrary confinement. See *Garcia-Maya*, 2026 WL 1965886, at *5 ("this Court finds that Petitioner is entitled to the procedural protections provided by § 1226(a), not merely by statute and regulation, but also by the Due Process Clause"); *Bautista*, 813 F. Supp. 3d at 1094 (discussing "the due process protections found within § 1226(a)"). *See also Bautista*, 820 F. Supp. 3d at 1033 (finding that the Government's noncompliance has led to "detention without due process" and "deprive[d] members of the Bond Eligible Class of their liberty, economic stability, and fundamental dignity")

The Supreme Court has long recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id.* at 690-92. Section 1226(a), and its implementing regulations, establish procedures to ensure that the Government only detains noncitizens where it advances these purposes. By denying Petitioner these protections,

15

Respondents have created an unacceptably high risk that Petitioner's detention is not justified on danger or flight risk grounds and that he remains confined solely due to the Government's refusal to comply with the *Maldonado Bautista* judgment. Indeed, in their Answer, Respondents do not argue that Petitioner presents a danger or flight risk or that there is any other valid governmental interest advanced by his ongoing detention.

Because Petitioner's detention has been unlawful from the outset, the Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from detention." *Reyes*, 2026 WL 2069974, at *2. The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

Release is particularly warranted given the Government's continued refusal to comply with the *Maldonado Bautista* final judgment. "[I]n suits against government officials and departments, we generally assume that they will comply with declaratory judgments." *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1031 (9th Cir. 2023). While the Government has appealed the *Maldonado Bautista* final judgment, "the government is

16

rebelling against the basic principle underlying our constitutional order that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.'" *Garcia-Maya*, 2026 WL 1965886, at \*9 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947)). Under these circumstances, the Court finds that "law and justice" require Petitioner's release. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) ("Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'"); *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013).

### III.   CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner's re-detention violated due process. Accordingly, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Nallely Kassandra Robledo Jaime's (A# 221-073-641) immediate release and enjoining Respondents from re-detaining her without first providing her notice and an opportunity to be heard; (3) Respondents must return all personal property, effects, funds, and documents seized, confiscated, or otherwise taken from Petition by ICE at the time of her arrest on or about May 20, 2026, and during her detention — including, without limitation, her identity and travel documents, consular identification, birth and civil records, immigration and court documents, cellular telephone and electronic devices, currency, and personal belongings — and to provide Petitioner and her counsel with a complete written inventory and receipt of all such property, together with an explanation of the disposition of any item not returned; and (4) Respondents shall file a status report no later than three (3) days from the date of this Order confirming that Petitioner has been released

17

from Respondents' custody consistent with this order.

Dated: August 7, 2026

_____
HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE